IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARRYL L. FRANKE,

    Plaintiff,

v.

CAROLYN COLVIN, Commissioner,
Social Security Administration,

    Defendant.

Civil No. 6:14-cv-01903-AC

FINDINGS AND RECOMMENDATION

MERRILL SCHNEIDER
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR  97293

    Attorney for Plaintiff

BILLY J. WILLIAMS
Acting United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204

1 - FINDINGS AND RECOMMENDATION -

DAVID J. BURDETT
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

ACOSTA, Magistrate Judge.

Plaintiff Darryl Franke ("Franke") brings this action under the Social Security Act ("SSA"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits. The Commissioner concedes reversible error and moves the court to remand for additional administrative proceedings. Franke opposes additional proceedings and urges the court to reverse and remand for an award of benefits.

For the reasons set forth below, the Commissioner's motion to remand for additional proceedings should be denied. This case should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and award of benefits.

## PROCEDURAL BACKGROUND

On July 25, 2006, Franke protectively filed an application for SSI, alleging a disability onset date of January 1, 1999. The claim was denied initially and upon reconsideration. Franke filed a request for a hearing, which was held on May 6, 2009, before Administrative Law Judge ("ALJ") Raul C. Pardo. Judge Pardo issued an unfavorable decision on June 2, 2009. Franke appealed the decision, and on March 29, 2012, the Appeals Council issued an Order remanding the matter for further hearing.

2 - FINDINGS AND RECOMMENDATION -

On February 25, 2013, ALJ Marilyn S. Mauer presided over the remand hearing. On April 11, 2013, Judge Mauer issued a written decision finding Franke not disabled. Franke appealed this decision to the Appeals Council, and on October 6, 2014, the Appeals Council denied the request for review, making the ALJ's determination the final decision of the Commissioner.

## FACTUAL BACKGROUND

Franke was born in 1964 and dropped out of high school in the ninth grade. Tr. 237, 625. He has no past relevant work. Tr. 29. Franke originally filed his application for benefits based on limitations from hyperthyroid, bipolar disorder, and depression. Tr. 287. In January 2007, he elaborated that his mind was slow, that he could not read or write, that his lungs were "not great," and that he got assistance from his mother-in-law to fill out disability forms. Tr. 340.

## STANDARD OF REVIEW

The Act provides for payment of various benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996), *superseded by regulation on other grounds as stated in Hudson v. Astrue*, Case No. CV-11-0025-CI, 2012 WL 5328786, *4 n.4 (W.D. Wash., Oct. 29, 2012). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable

to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## THE ALJ'S DECISION

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. At step one, the ALJ found that Franke had not engaged in substantial gainful activity since his alleged onset date. Tr. 19. At step two, the ALJ found Franke suffered from the following severe impairments: bipolar disorder; methamphetamine abuse; cannabis abuse; borderline intellectual functioning; learning disorder; antisocial personality disorder; chronic lumbar strain; and obesity. Tr. 20.

At step three, the ALJ determined that none of Franke's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. Specifically, the ALJ found Franke did not satisfy the requirements of Listing 12.05. Tr. 22.

Between steps three and four, the ALJ found that Franke had the following residual functional capacity ("RFC"):

> [A] limited range of medium exertion work in that he can lift and carry 25 pounds occasionally and 10 pounds frequently and sit, stand, and walk without limits. He can never climb ladders, ropes, scaffolds and can have no exposure to hazards such as unprotected heights or large moving equipment. Mr. Franke can frequently climb ramps, stairs and has no other postural limits. He should have no public contact and no teamwork assignments. Mr. Franke can do no reading above the third grade level. He can understand carry out simple instructions in a routine environment with few changes.

Tr. 22.

At step four, the ALJ found that Franke had no past relevant work under 20 C.F.R. § 416.965. Tr. 29. At step five, relying on the testimony of a vocational expert ("VE"), the ALJ found that there were jobs that existed in significant numbers in the national economy that Franke was capable of performing. Tr. 30. The ALJ identified the representative occupations of "Cleaner II" (DOT #919.687-010), "Bench worker" (DOT #713.684-018), and "Box filler" (DOT #920.687-134). Tr. 30. The ALJ thus concluded that Franke was not under a disability as defined by the SSA.

## DISCUSSION

Franke argues the ALJ erred in two respects: (1) by failing to find Franke met the requirements for a finding of disability under Listing 12.05C; and (2) by making step five findings unsupported by substantial evidence. The Commissioner concedes that the ALJ erred in failing to apply the Commissioner's policy with regard to providing sufficient rationale for adopting the opinions of the VE at step five that deviated from the Dictionary Titles. The Commissioner also

states that Franke's record should be re-evaluated for possible equivalence with the requirements of Listing 12.05C.

As noted, both parties agree that remand is required. The question then is whether to remand for additional proceedings or an award of benefits, a decision that is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). Where the record is fully developed and further proceedings would serve no useful purpose, remand for an award of benefits is appropriate. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citing *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

The reviewing court must examine whether the claimant is disabled within the meaning of the statute, including an analysis of whether evidence improperly excluded by the ALJ should be credited as true. *Id.* Such evidence is credited as true and an immediate award of benefits is required where (1) the ALJ failed to provide legally sufficient reasons for rejecting the disputed evidence; (2) there are no outstanding issues that must be resolved before a disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if the disputed evidence was credited. *Harman*, 211 F.3ed at 1178 (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. To "meet" a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed

impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. § 404.1526).

Listing 12.05 provides in relevant part:

> **12.05** Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Thus the test for whether a claimant meets 12.05C is whether a claimant demonstrates (1) a mental impairment shown by adaptive deficits with onset before age 22; (2) a valid verbal performance or full scale IQ of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Bailey v. Colvin*, Case No. 1:14-cv-00749-BR, 2015 WL 4488153, *11 (D.Or., July 22, 2015) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.05). Listing 12.05 does not require a diagnosis or medical finding of mental retardation, but relies instead on valid IQ scores in conjunction with other evidence to establish "subaverage general intellectual functioning." *Id.*

"A showing of early onset for purposes of Listing 12.05C does not require clinical or IQ tests." *Pedro v. Astrue*, 849 F.Supp.2d 1006, 1010 (D.Or. 2011). Instead, "[t]o satisfy the first element of the test, '[a] claimant may use circumstantial evidence to demonstrate adaptive

7 - FINDINGS AND RECOMMENDATION -

functioning deficits, such as attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.'" *Bailey*, 2011 WL 4488153 at *11 (quoting *Pedro*, 849 F.Supp.2d at 1011 (additional citation omitted).

For the second element, a claimant must show a valid verbal, performance, or full scale IQ of 60-70. "Although an ALJ may find an IQ score invalid, the ALJ may not find an IQ score valid and still find a claimant not qualified on the basis of claimant's level of functioning." *Id.* "The listing does not speak to functioning–it speaks only to the IQ score itself." *Thresher v. Astrue*, 283 F.App'x 473, 475 (9th Cir. 2008).

If the ALJ finds that the claimant has an additional "severe" mental or physical impairment, the impairment satisfies the third element of the test as a "significant work-related limitation of function" for the purposes of listing 12.05C. 20 C.F.R. § Pt. 404, Subpt. P., App. 1, § 12.00A.

The only element at issue here is the first one. With respect to the second element, Franke's IQ score is noted as 65 in Department of Corrections records from 2004. Tr. 489. Consultative examiner Dr. Ronald Duvall reported Franke's scores as follows: Verbal IQ 68, Performance IQ 68, Full Scale IQ 65. Tr. 543. The validity of Franke's IQ scores is not questioned. As for the third element, the ALJ found Franke had additional severe impairments, so the third requirement under Listing 12.05C is met as well.

In discussing Listing 12.05C, the ALJ stated that the evidence "does not establish significantly subaverage general intellectual functioning before age 22." Tr. 22. ALJ Mauer explained this finding as follow: "it was not raised as an alleged complaint in his initial disability report, the available school records do not appear to include special education, and there is the issue

of influence of bipolar, personality and polysubstance abuse disorders on functioning." Tr. 22. The ALJ also cited the discussion in the prior ALJ's decision. Tr. 22.

The prior ALJ noted that Franke alleged having been placed in special education classes, but noted that the only available school records did not indicate any such classes. Tr. 82. The prior ALJ also noted that Franke did not allege cognitive impairment in his initial disability report, and that his treating mental health providers had not noted this problem. Tr. 81-82. Finally, the prior ALJ concluded that Franke's low IQ was "a direct result of his polysubstance abuse, and that even if such cognitive deficits had significantly manifested before age 22, his drug and alcohol abuse would be found to have been contributing material factors." Tr. 82.

There is evidence in the record that Franke was placed in special education classes, despite the ALJ's finding to the contrary. In his September 6, 2006, psychodiagnostic evaluation, Dr. Duvall referenced a prior consultative examination he performed on Franke on July 11, 2005. Tr. 540. Dr. Duvall incorporated information directly from the 2005 evaluation, including information that Franke was placed in special education classes from the 5th through 7th grades, that he was held back grades "a few times" in the 4th and 5th grades, and that school was very hard for him. Tr. 541. Dr. Duvall also noted that Franke dropped out of school in the middle of 9th grade. Tr. 542. Two consultative examiners also noted Franke's placement in special education classes, as did the testifying medical expert. Tr. 47-48, 541, 956.

The ALJ did not give any reason to support a conclusion that Franke was not in special education classes from 5th through 7th grade, or that he did not get "held back" in 4th and 5th grades. As Dr. Duvall's 2005 evaluation is not part of the record, it is not clear whether this

9 - FINDINGS AND RECOMMENDATION -

information was demonstrated by other records or by a statement from Franke. In either event, it is apparent Dr. Duvall believed it to be accurate.

Moreover, the only school report cards in the record pertain to Franke's first year of high school, not his elementary education. Franke's high school report card indicates he completed only one quarter, finishing just four classes, two with minimum passing grades. Tr. 625. Moreover, the report card indicates Franke was enrolled in 9th grade in the 1979-80 academic year, even though he would have turned 16 that year, which indicates he was at least a year behind his peers. Tr. 625.

In addition, the ALJ's finding that Franke's low IQ was attributable to his drug history lacks support in the record. In his 2006 evaluation, Dr. Duvall indicated that Franke's IQ scores "accurately reflected his true intellectual functioning." Tr. 543. In discussing Franke's unreliable history, Dr. Duvall noted that his inconsistent statements may have been a result of antisocial personality disorder or mild retardation. Tr. 543-44. Dr. Duvall noted that the two diagnoses of antisocial personality disorder and extensive history with methamphetamines "*along with* his low IQ, form the core of his psychopathology." Tr. 544 (emphasis added). Dr. Duvall did not attribute Franke's low IQ to his drug history.

Emil Slatick, Ph.D. conducted a diagnostic interview with Franke on January 24, 2013. Tr. 954-958. Dr. Slatick, who was also aware of Franke's extensive use of methamphetamines, indicated that there was a "strong possibility of some residual effects on both his mood and on his levels of social discomfort" from his drug use. Tr. 957. Dr. Slatick did not raise the possibility that Franke's low IQ could be a result of drug use; rather, Dr. Slatick speculated that Franke's substance use was an attempt to self-medicate in order to feel socially functional. Tr. 957.

In the Appeals Council's Order remanding the case after ALJ Pardo's decision, the Council noted ALJ Pardo's finding that "[t]he preponderance of evidence strongly suggests that the claimant's sub-average intellectual functioning has been a direct result of his polysubstance abuse . . . ." Tr. 89. The Council found "[h]owever, no specific evidence was cited to support this conclusion and factors such as the claimant's limited education, special education classes, no past relevant work, and incarceration were not adequately considered." Tr. 89. The Council concluded that "[t]estimony from a mental medical expert regarding this issue is warranted." Tr. 89.

At the second ALJ hearing, a mental medical expert did testify. Regarding Franke's intellectual functioning, Dr. Arthur Lewy testified as follows:

> Q. With respect to the learning disabilities, there was at some point in this record a determined IQ of 65. Did you consider a diagnosis of borderline intellectual function, or mild mental retardation?
>
> A. I considered it, your honor. I don't think -- I don't think that the diagnosis of mental retardation or intellectual disability is supported. We have some opinions of low average intellect, and there were some older school records, sounded like it was some report of special ed that was there, although it was unclear what it was for.

Tr. 47-48. Thus, the medical expert did not address the question posed by the Appeals Council, whether Franke's sub-average intellectual functioning was a direct result of his substance use. To the extent ALJ Mauer relied upon ALJ Pardo's opinion on this issue, ALJ Mauer erred.

The record provides additional circumstantial evidence demonstrating onset of Franke's intellectual impairment prior to age 22. Franke cannot handle his own finances. Tr. 296-7, 307, 544. He requires assistance from his mother-in-law and wife filling out forms. Tr. 340. He is not consistent in managing his hygiene; he requires reminders to shave and take medication. Tr. 295,

306, 396. He does not drive. Tr. 397. Franke has virtually no work history. Tr. 29, 277-282. Franke struggles with reading and writing; the RFC finding by the ALJ acknowledged that he could not read above the third grade level. Tr. 22. His memory, fund of knowledge, and concentration are limited. Tr. 543, 840, 954.

By contrast, the claimant in *Pedro* graduated high school, was able to drive, lived independently, handled her own hygiene, and took care of her children. Nevertheless, the court found the claimant in *Pedro* to have "amply" demonstrated the onset of her mental handicap before the age of 22 because she had taken special-education classes, had a history of low-skilled work, and testified she struggles with reading and writing. "The listing does not require more." *Pedro*, 849 F. Supp. 2d at 1014; *see also Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003) (holding that evidence that the claimant took special education classes through the ninth grade, dropped out in tenth grade, "struggled" to obtain a GED, and had a limited work history supported a finding that onset of mental retardation occurred before age 22); *Canales v. Astrue*, Case No. 3:10-cv-01200-HZ, 2011 WL 4704228, at *6 (claimant "cycled in and out of special education classes" and "occasionally obtain[ed] a passing grade, or better, but failed the majority of his classes").

On the record, the court concludes Franke met the first element of the test for satisfying the requirements of Listing 12.05C. Because the ALJ correctly found Franke met the second and third elements, Franke meets the requirements of Listing 12.05C and, therefore, is disabled.[1] No useful purpose would be served by a remand of this matter for further proceedings. Accordingly, the case

---

[1] A finding that Franke meets the requirements of Listing 12.05C obviates the needs to address Franke's second claim of error.

12 - FINDINGS AND RECOMMENDATION -

should be remanded to the Commissioner for the immediate calculation and payment of benefits to Franke.

## RECOMMENDATION

For these reasons, the decision of the Commissioner should be REVERSED and this matter should be REMANDED to the Commissioner pursuant to sentence four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Franke.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due November 24, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this ___ day of November, 2015.

John V. Acosta
United States Magistrate Judge